### *GEO. H. HATHAWAY v. JAMES T. SABIN.

*Variance. Assignment of breach of contract. Excuse for non-performance. Damages directed by court.*

1. The plaintiff declared as "Geo. H. Hathaway, doing business under the name of the Redpath Lyceum Bureau." The defendant's written contract was with the "Redpath Lyceum Bureau." The plaintiff was the only person interested in the contract. *Held*, that on trial no advantage could be taken of the fact that the plaintiff ordinarily did business under the style "Redpath Lyceum Bureau, Geo. H. Hathaway & Co."

2. The contract required the defendant to furnish a hall and pay $75 after the entertainment. The plaintiff alleged readiness to perform on his part, and assigned as a breach the failure of the defendant to furnish the hall. *Held*, that under this assignment the plaintiff might recover the $75 which he would have earned had the hall been furnished.

3. One party to a contract cannot assign as an excuse for non-performance the fact that when it became necessary for him to act in performance on his part he had reasonable cause to believe that the other party would not be able to perform, provided the other party has done nothing to put it out of his power to perform, and does in fact tender performance. And still less can he assign such belief as an excuse when, as in this case, he acts upon it before the time within which he can perform has expired.

* Heard at the May term, 1890.

4.  By the terms of the written contract the plaintiff was to give a concert. The defendant was to furnish a hall and pay the plaintiff $75. The defendant notified the plaintiff on the morning of the appointed day that the concert would not take place owing to the inclemency of the weather, and did not open his hall. The plaintiff was ready at the time and place specified to give the concert. The court directed a verdict in the sum of $75 and interest for the plaintiff. *Held,* correct, for, it not appearing that the plaintiff could have done anything under the circumstances after receiving the notice to lessen his damages, there was nothing for the jury.

Assumpsit for the amount due on a written contract. Plea, the general issue with notice of special matter. Trial by jury at the September term, 1889, Ross, J., presiding. The court directed a verdict for the plaintiff. Exceptions by the defendant.

The case appears in the opinion.

*C. W. Porter,* for the plaintiff.

A party is not excused from performance of a contract by inevitable accident or other unforeseen contingency.

2 Par. Cont. 673, note h.

*H. W. Kemp* and *H. A. Huse,* for the defendant.

There was a variance between the description of the plaintiff in the declaration and the evidence, of which the defendant might take advantage on trial under the general issue. Gould's Pl. Ch. 5 ss. 99, 100.

The opinion of the court was delivered by

MUNSON, J. The plaintiff declares as "George H. Hathaway, doing business under the name of the Redpath Lyceum Bureau." The proof is that he was doing business under the style of the "Redpath Lyceum Bureau, G. H. Hathaway & Co." But the written contract entered into by the defendant was with the "Redpath Lyceum Bureau." So this case is not one where the misnomer occasions a variance between the declaration and a

written instrument. The only variance is between the plaintiff's declaration and his testimony as to the assumed name under which he was doing business. But George H. Hathaway is the only person interested in the claim, and the defendant dealt with him under the name set up in the declaration. As the plaintiff is given the style under which he contracted with the defendant, we see no ground on which the defendant can take advantage of the fact disclosed by the evidence, that in making this contract the plaintiff did not use the whole of the assumed name under which his general business was conducted.

The contract required the defendant to furnish a hall for the concert, and to pay $75 after the entertainment. The plaintiff alleged readiness to perform on his part, and assigned as the breach the defendant's failure to furnish a hall. The court directed a verdict for the plaintiff for $75 and interest. The defendant insists that inasmuch as the non-payment of the $75 was not assigned as the breach, and as there was no proof of any loss except in the non-payment of the $75, there was no proof of loss from any breach complained of, and that consequently there could be no recovery.

We think it cannot be said that the proof of loss in the non-receipt of the $75 did not apply to the breach declared upon. The plaintiff was ready to give the concert, and on giving it would have been entitled to the $75; but he was prevented from giving it by the defendant's failure to furnish a hall. This failure was properly assigned as the breach from which the plaintiff suffered damage. The plaintiff does not sue for the compensation to which he would have been entitled if the contract had been carried out, but for the damages he has sustained in being compelled to leave the contract unperformed. The breach is not the non-payment of the unearned compensation, but the failure to perform the antecedent stipulation which would have enabled the plaintiff to earn it.

The defendant also contends that he was excused from open-
ing and heating the hall by the apparent impossibility of the mu-
sicians' reaching the town.   During the thirty-six hours preced-
ing the evening appointed for the concert, a snow-storm of unusual
violence prevailed in Montpelier and vicinity, which early on the
day of the concert rendered the streets of that village and the roads
from the surrounding country practically impassable.   The quar-
tette by which the concert was to be given was in Barre, having
gone there from Montpelier the evening before; and trains on
the spur from Montpelier to Barre were suspended.   Late in the
afternoon, however, an irregular train went to Barre, and on this
the musicians returned to Montpelier, arriving early in the eve-
ning, and going to the hall at the time appointed.

It is claimed that the defendant's conduct must be tested by
the situation as it was at the time when action on his part became
necessary, and that he is saved from liability by the doctrine that
when one party ascertains that the other will not be able to per-
form what he has undertaken, the party ascertaining this is ex-
cused from performing the obligations resting upon him.   It is
doubtless true that when one party has put it out of his power to
perform, the other party can maintain an action without having
tendered performance on his part.   But a party who becomes in-
volved in difficulties for which he is not responsible, if ultimately
able to perform, is not to be deprived of the benefits of his con-
tract because of an assumption by the other party that the diffi-
culties would prove insurmountable.   Here, the defendant was
mistaken in supposing that the plaintiff would not be able to per-
form, and we know of no rule which permits him to plead reason-
able cause to believe so in excuse for the failure on his part.

It is apparent, also, that the defendant's course was deter-
mined before the time when action on his part became necessary.
It was not necessary to commence the heating of the hall until
four o'clock in the afternoon, but about ten o'clock in the fore-
noon the defendant telephoned the manager that owing to the

condition of the streets in Montpelier it would be impossible to have the entertainment that evening. It is evident from this that the defendant based his action upon his belief that there would be no audience, rather than upon the supposition that the musicians could not reach the place of entertainment. He did not wait until it was necessary to take action about the hall before deciding that there could be no concert. But at the time when action on his part became necessary, there was nothing in the situation that could relieve him from liability. The contract contains no provision for his protection from such a misfortune, and the loss must fall on him.

The defendant also insists that upon being held liable he was entitled to have the damages assessed by the jury. We think, however, that the plaintiff was entitled to have this verdict directed. Having incurred all the expense necessary to enable him to give the concert, the plaintiff's damages were necessarily the amount to which he would have been entitled for giving it. It is not for the defendant to say that the damages were less than the amount he had agreed to pay, when the plaintiff had done and incurred everything on his part, and was prevented from earning the compensation agreed upon solely by the defendant's failure. The message sent the manager in the forenoon, even if treated as a sufficient notice to stop performance, did not require any different action as regards the damages. It afforded no ground for an application of the doctrine which forbids the making of expense after receiving notice of the repudiation of a contract; for the expense afterwards incurred by the musicians was only such as was required by the situation in which the notice found them. Neither did the case permit an application of the rule which requires a party who is stopped in the performance of a contract for service to do what he can to lessen the damages by seeking like employment elsewhere.

*Judgment affirmed.*