**Willie R. WHITEHORN, Plaintiff-Appellant,**

v.

**G. W. DICKERSON, Defendant-Respondent.**

No. 8612.

Springfield Court of Appeals.

Missouri.

Sept. 29, 1967.

James R. Hall, Doniphan, Graham Moore, Memphis, Tenn., for plaintiff-appellant.

John A. Casey, Poplar Bluff, for defendant-respondent.

STONE, Presiding Judge.

In this court-tried action for rental reserved under a written lease agreement executed under date of September 20, 1962, by plaintiff Mrs. Willie R. Whitehorn, as lessor, and by defendant G. W. Dickerson, as lessee, plaintiff appeals from a judgment in favor of defendant. The leased premises, a portion of a building owned by plaintiff in Covington, Tennessee, consisted of a ground-floor office suite remodeled by plaintiff according to "his [defendant's] own plans" for the latter's use in his practice as a chiropractor. The term of the lease was for the period of five years from and after October 1, 1962. The rental reserved for that term was $7,500 "payable monthly in advance in 60 monthly installments of $125.00 each." After making eight monthly payments in the aggregate amount of $1,000, defendant quit the leased premises "because of his financial condition" and later moved to Missouri, where this action for subsequent installments was instituted.

Since the situs of the leased premises was in Tennessee and the lease was negotiated and executed there, the substantive rights of the respective parties are determinable under the law of Tennessee [Consolidated Sun Ray, Inc. v. Oppenstein, 8 Cir., 335 F.2d 801, 803(2); Broadwell v. Banks, D.C.Mo., 134 F. 470, 474; C. H. Little & Co. v. Gay Apparel Corp., D.C. N.Y., 108 F.Supp. 762, 763(2); annotation 15 A.L.R.2d 1199, 1203], and the parties so stipulated in the trial court. Relying upon Karns v. Vester Motor Co., 161 Tenn. 331, 30 S.W.2d 245, the only authority cited in his brief, defendant lessee asserts that case "imposes upon the landlord the duty to make a reasonable effort to rent the abandoned premises in order to minimize the lessor's damage" and that instant plaintiff "was under an obligation to rent the abandoned premises even if said premises had to be rented at a lower rental." So defendant contends that, upon his admitted abandonment of the leased premises, plaintiff had a duty to mitigate her damages, which she failed to discharge. Upon that theory the trial court was persuaded to enter a general judgment for defendant and we are urged to affirm.

*But if* plaintiff had such duty to mitigate damages (of which more anon), her failure so to do would not have destroyed her cause of action [Brown v. Kroger Company, Mo.App., 358 S.W.2d 429, 432] or barred her entirely from recovery, but only would have prevented the recovery of such damages as might have been avoided by reasonable efforts on her part. Brown v. Kroger Co., supra, 358 S.W.2d at 432; Cline v. City of St. Joseph, Mo.App., 245 S.W.2d 695, 702(10); Lokey v. Rudy-Patrick Seed Co., Mo.App., 285 S.W. 1028, 1033(12); 25 C.J.S. Damages § 33, l. c. 703. Hence, this would have been an affirmative defense, as was recognized by defendant who pleaded it as such in his answer; and the burden of proof as to such defense would have rested upon defendant regardless of whether action had been instituted in Missouri [Cline v. City of St. Joseph, supra, 245 S.W.2d at 702 (11)] or in Tennessee. International Correspondence School v. Crabtree, 162 Tenn. 70, 34 S.W.2d 447, 449, 78 A.L.R. 330; Plesofsky v. Kaufman & Flonacker, 140 Tenn. 208, 204 S.W. 204, 206(2), 1 A.L.R. 433; Southern Fire & Casualty Co. v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785, 792 (12); Price v. Osborne, 24 Tenn.App. 525, 147 S.W.2d 412, 413(6, 7).

Upon cross-examination of plaintiff, the only witness, it was developed that she had made no *affirmative* effort to rent the leased premises after defendant had abandoned them, and that she had entertained the belief, perhaps mistakenly (so Karns v. Vester Motor Co., supra, would seem to indicate) but nevertheless honestly after advising with her then Tennessee counsel, that, if she had relet the abandoned premises on terms other than those in the lease executed by defendant, such action would have worked an acceptance of defendant's surrender by operation of law, which would

have extinguished the leasehold interest and released defendant from liability for payment of subsequent monthly installments. See Von Schleinitz v. North Hotel Co., 323 Mo. 1110, 23 S.W.2d 64, 74-78(1–3); Zoglin v. Layland, Mo.App., 328 S.W.2d 718, 722–723(7). However, she referred to defendant the "one or two" persons who called her about the leased premises, and her then Tennessee counsel even "drew up a lease for a loan company who we thought would take it" but did not. There was no showing that any "reasonably acceptable tenant" was tendered by defendant or was otherwise available to plaintiff. See note 55 Mich.L.Rev. 1029, 1031. So it fairly could not have been said that plaintiff absolutely and arbitrarily refused to relet. Furthermore, there was no evidence as to (a) when the "one or two" persons or the "loan company" had contacted plaintiff, or (b) the date, rentals or terms upon which any person or firm would have leased the abandoned premises.

■ Accordingly, *if* it was plaintiff's duty to have made an effort to mitigate her loss, the record before us would not have permitted a finding by the trier of the facts as to when that duty was breached, if so, or what diminution of damages would have resulted but for such breach. This was acknowledged by defendant's counsel in his oral argument on appeal when, overlooking the fact that plaintiff's alleged failure to mitigate her damages was an affirmative defense and that the burden of proof with respect thereto rested upon defendant, counsel frankly conceded that plaintiff would have been entitled to have recovered the stipulated rentals to the date on which she had (so he asserted) "refused to rent the premises" but vigorously insisted that the general judgment for defendant should be affirmed in the absence of evidence as to when she had so refused.

This brings us to the clear conclusion, with which our opinion properly might be terminated, that the judgment for defendant cannot stand. However, mindful that

the case must be remanded for retrial, we are moved to discuss the basic question as to whether, under Tennessee law, plaintiff had a duty to take affirmative action in an effort to mitigate her damages. As we have noted, instant defendant insists that Karns v. Vester Motor Company, 161 Tenn. 331, 30 S.W.2d 245 (1930), imposed such duty. We do not so read and understand that case. In Karns, plaintiffs lessors were informed by defendant lessee that the latter intended to vacate the leased premises. Thereupon, plaintiffs notified defendant lessee that they declined to accept surrender of the lease and would continue to look to it for the rent but that, to minimize the loss, they would undertake to rent the premises for lessee's account, still holding it responsible for any loss. The only issue was as to whether or not plaintiffs lessors, by thereafter rerenting the premises to others, "consented, as a matter of law, to the surrender of the premises" [30 S.W.2d at 245] and the only ruling necessary for disposition of the case on appeal was that, in the stated circumstances, there was no acceptance of surrender. Instant defendant relies upon the last sentence in Karns, supra, 30 S.W.2d at 246, that "[w]e do not hesitate, therefore, to adopt *the broad and just rule stated above, which conforms to a general rule* approved by this court, requiring the injured party to a contract to do everything possible to minimize his damages." (Emphasis ours) But "the broad and just rule stated above" was the rule as to what works an acceptance by the lessor of the lessee's surrender of leased premises, and the italicized portion of the above-quoted sentence shows that the court simply pointed out that such rule *conformed to a general rule* in the law of contracts.

In an annotation at 110 A.L.R. 368 on the subject "when landlord's reletting, or efforts to relet, after tenant's abandonment or refusal to enter, deemed to be acceptance of surrender," the Karns case, supra, was cited with others in which "it has been held, apparently as a matter of law, that there was no acceptance of surrender." 110 A.

L.R. at 376. But Karns was *not* cited in either of two exhaustive annotations at 40 A.L.R. 190 and 126 A.L.R. 1219 on the basic issue in this case, i. e., "duty of landlord, on abandonment of premises by tenant before expiration of term, to use due diligence to procure another tenant."

The appellate courts of Tennessee have cautioned the bar that "[w]hat we say in an opinion should be confined to, and limited by, the facts of the case under consideration and the questions necessary for a decision of that case." Staten v. State, 191 Tenn. 157, 232 S.W.2d 18, 19(5); Textile Workers Union v. Brookside Mills, Inc., 47 Tenn.App. 663, 341 S.W.2d 758, 760. See Taylor v. Taylor, 162 Tenn. 482, 40 S.W.2d 393, 395. For similar warnings by our Missouri courts, see State ex rel. Bixby v. City of St. Louis, 241 Mo. 231, 239–240, 145 S.W. 801, 803; Ragsdale v. Brotherhood of Railroad Trainmen, Mo.App., 157 S.W.2d 785, 787(3). " 'Courts sometimes go beyond the point necessary for a decision in a lawsuit and make expressions on certain things there involved which are not necessary for a determination of the lawsuit. Such statements by a court are known as dictum * * * and [are], therefore, not a controlling statement to courts when the question rises again that has been commented on by way of dictum.' " Frost v. State, 203 Tenn. 549, 314 S.W.2d 33, 35(3).

In fine, we think that Karns, supra, is Tennessee authority that, in circumstances such as there shown, the lessor's reletting does not work an acceptance of surrender of the leased premises (or, otherwise stated, that the lessor has the *right* in such circumstances, after appropriate notice to the lessee, to relet for lessee's account and hold him for the difference) but does *not* constitute an authoritative precedent or contain a controlling statement as to the lessor's *duty* vel non, upon the lessee's abandonment of the leased premises prior to expiration of the term, to use due diligence to secure a new tenant. Furthermore, if the last sentence in Karns, supra, were treated as dictum suggesting that the lessor might have

such duty, we would be unwilling to prophesy that the appellate courts of Tennessee would so rule if that issue were directly presented. For, as pointed out in the annotation on this subject at 40 A.L.R. 190, 194: "In several states where the courts have held, when the question was directly before them, that a landlord is under no duty to procure a new tenant when premises are abandoned before the end of the term, *there are dicta to the opposite effect in other cases. This is usually so in cases where the court decides that, if the lessor does procure a new tenant, his doing so does not release the former one from obligation under the abandoned lease."* The quoted observation was strikingly illustrated and supported by cited cases from no fewer than five jurisdictions. In this connection, see 32 Am.Jur. Landlord and Tenant § 519, p. 423.

No reported Tennessee case ruling the issue as to the lessor's *duty* to mitigate having been found in the exhaustive A.L.R. annotations on that subject [40 A.L.R. 190 and 126 A.L.R. 1219] or in the A.L.R. Blue Books of Supplemental Decisions or having been disclosed by our independent research, we are cognizant of no public statute or judicial decision of Tennessee [V.A.M.R. Rule 55.23(b)] which controls resolution of the basic issue in this case. In these circumstances and with Tennessee being a common-law state as we know judicially [Rositzky v. Rositzky, 329 Mo. 662, 680, 46 S.W.2d 591, 599], the common law there is presumed to be the same as here [Ragsdale v. Brotherhood of Railroad Trainmen, supra, 157 S.W.2d at 788 (4); General Aviation Supply Co. v. Insurance Co. of North America, D.C.Mo., 181 F.Supp. 380, 383(2), affirmed 8 Cir., 283 F.2d 590; Boland v. Love, 95 U.S.App. D.C. 337, 222 F.2d 27, 32(6, 7); Restatement, Conflict of Laws, § 622, p. 737] and the basic issue as to the lessor's duty to mitigate is to be determined by the common law of Missouri. Gray v. Metropolitan Life Ins. Co., Mo.App., 150 S.W.2d 563, 564(1); Boyer v. North End Drayage Co.,

Mo.App., 67 S.W.2d 769, 770(3); Industrial Acceptance Corp. v. Webb, Mo.App., 287 S.W. 657, 660(10, 11). Though it is said that the common law imports a system of unwritten law, not evidenced by statute, but by tradition and the opinions and judgments of the sages of the law [Riddick v. Walsh, 15 Mo. 519, 536; State ex rel. O'Malley v. Musick, 145 Mo.App. 33, 130 S.W. 398, 402(7)], the common law is inseparably identified with the decisions of the courts and can be determined only from such decisions in former cases bearing upon the subject under inquiry. Musser v. Musser, 281 Mo. 649, 656–660, 221 S.W. 46, 47–48(2).

The only Missouri case here cited by counsel is Jennings v. First Nat. Bank of Kansas City, 225 Mo.App. 232, 30 S.W.2d 1049, an action "to determine the right to $2,500" deposited by lessee when the lease was executed [225 Mo.App. at 234, 30 S.W.2d at 1050], in which the court declared that "the disposition of this case must turn upon the question as to whether or not the lease before us provides for a penalty or for liquidated damages." 225 Mo.App. at 238, 30 S.W.2d at 1052. In an extended discussion of Von Schleinitz v. North Hotel Co., 323 Mo. 1110, 23 S.W.2d 64, it was said [225 Mo.App. at 237–238, 30 S.W.2d at 1052] that "our Supreme Court [there] held that upon abandonment of leased premises by the tenant the landlord has an election either to permit the premises to remain vacant until the end of the term and then sue for recovery of the stipulated rents, or he *may* mitigate the loss of rents by getting what he can out of the premises and recover the balance from the tenant" and again, still referring to Von Schleinitz, supra, that "at the time of the abandonment and before the unconditional acceptance of the surrender the landlord had the right to hold the tenant for the payment of the entire rent stipulated in the contract, or, upon proper notice, for damages for failure to pay." Touching upon the same subject in considering the state of facts presented in Jen-

nings, supra, the court stated that "if nonpayment of rent should occur, the landlord might then elect to refuse to accept a surrender and compel the tenant to hold him harmless from a failure to pay rent for the entire term, or to declare a forfeiture and seek to hold the deposit" made by the tenant when the lease was executed. 225 Mo.App. at 238, 30 S.W.2d at 1053.

In Von Schleinitz, supra, the primary holding was that, where upon the tenant's abandonment the landlord had made no protest about resuming possession of the leased premises and had given no notice that he was doing so for the account of the tenant and would hold it liable for any deficiency, the trial court was justified in finding that the landlord had accepted the tenant's surrender by operation of law, thereby terminating the landlord-tenant relationship. 323 Mo. at 1131–1138, 23 S.W.2d at 74–78 (1–3).

In Crow v. Kaupp, Mo., 50 S.W.2d 995, the lease specifically provided that, in the event of default by lessee, lessor "*may* relet said premises for the account of [lessee], for and during the remainder of the term of this lease" [50 S.W.2d at 996] and thereby "authorized the lessor, as the lessee's agent, to relet the premises for the latter's benefit * * *." 50 S.W.2d at 998. Accordingly, lessor's reletting upon such contingency was "presumed, in the absence of any fact indicating the contrary, to have been intended by him to be for the benefit of the lessee. This because *it was his* [lessor's] *duty, under* both the lease and *the law, to relet the premises for the benefit of the lessee in order to minimize the damages.* Jones on Landlord and Tenant, § 551. The reentry and reletting of the premises by the plaintiff [lessor] as alleged in the petition did not effect a surrender by operation of law." 50 S.W.2d at 998(9, 10). Hence, the judgment nisi for defendant lessee entered upon sustension of a general demurrer to plaintiff lessor's petition was set aside and the cause was remanded. Putting out of mind the provocative question as to wheth-

er it was either necessary or proper to declare that it was lessor's *"duty"* under the above-quoted *permissive* provision of the lease (i. e., that lessor *"may* relet * * *") to relet the premises to minimize damages, we have no hesitancy in expressing the view that the italicized portion of the statement as to lessor's duty (i. e., "it was his duty under * * * the law, to relet the premises for the benefit of the lessee in order to minimize the damages") properly must be classified in the same category of nonauthoritative and noncontrolling dicta as the last sentence in Karns, supra, 30 S.W.2d at 246, for in both of those cases (and also in Von Schleinitz, supra) the determinative question was as to whether or not there had been an acceptance by lessor of lessee's surrender of leased premises.

Since no Missouri case turning upon, and dealing directly with, the lessor's *duty* vel non, upon the lessee's abandonment of the leased premises prior to expiration of the term, to use due diligence to secure a new tenant (as distinguished from the lessor's *right* in such circumstances, after appropriate notice to the lessee, to relet for his account) has come to our attention, and since a final determination as to the lessor's *duty* is unnecessary to proper disposition of the instant appeal, we do not rule that question and thereby foreclose counsel from rendering to the trial court, upon further investigation of Tennessee and Missouri law, all possible assistance in resolution of this basic issue.

■ Of course, if counsel's search for a controlling Tennessee or Missouri case is no more productive or conclusive than ours has been, precedents in other jurisdictions will become persuasive. Musser, supra, 281 Mo. at 660, 221 S.W. at 48–49(3). In that event, it may be said confidently that the overwhelming weight of judicial authority elsewhere is that, in the absence of a provision in the lease to the contrary, lessor is under no duty to seek a new tenant when the latter abandons the leased premises prior to expiration of the term but may let the premises lie idle and collect the rents reserved as they accrue. 52 C.J.S. Landlord and Tenant § 498a, p. 276; 32 Am.Jur. Landlord and Tenant § 519, p. 423; 1 American Law of Property § 399, l. c. 392; 1 Tiffany, Landlord and Tenant, § 182h, p. 1170; annotation 126 A.L.R. 1219; annotation 40 A.L.R. 190; note 55 Mich.L.Rev. 1029. See McNally v. Moser, 210 Md. 127, 122 A.2d 555, 563(16), 60 A.L.R.2d 388; Gruman v. Investors Diversified Services, 247 Minn. 502, 78 N.W.2d 377, 379–380, and cases there collected.

The judgment for defendant is set aside and the cause is remanded for further proceedings not inconsistent with this opinion.

HOGAN and TITUS, JJ., concur.